IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| SHAWNA ENSLEY, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 2:12-CV-254-RWS |
| NORTH GEORGIA MOUNTAIN : | |
| CRISIS NETWORK, INC.; : | |
| NORTH GEORGIA MOUNTAIN : | |
| CRISIS NETWORK, INC. : | |
| GROUP HEALTH AND DENTAL : | |
| INSURANCE PLAN; and : | |
| HOWARD SLAUGHTER, : | |
| STEVEN MIRACLE, and JODI : | |
| SPIEGEL in their capacities as : | |
| fiduciaries of the North Georgia : | |
| Mountain Crisis Network, Inc. : | |
| Group Health Insurance Plan, : | |
| : | |
| Defendants. : | |

## **ORDER**

This case is before the Court on North Georgia Mountain Crisis Center, Inc.'s ("Crisis Center") Motion for Reconsideration [54], Plaintiff's Motion for Summary Judgment [37], and Defendants' Motion for Summary Judgment

[38].¹  After considering the record and the Parties' submissions, the Court enters the following Order.

## Discussion²

**I.     Crisis Center's Motion for Reconsideration**

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but only when "absolutely necessary."  LR 7.2(E).  Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact."  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).

A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind."  Id. at 1259.  Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is

---

¹ The Court has already entered an Order on the Parties' motions for summary judgment.  However, the Court reserved ruling on Count I, pending further briefing by the Parties.  The issues are now fully briefed and ready for the Court's consideration.

² The Court's previous Order contains a full description of the factual background.

given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001). Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

The Crisis Center seeks reconsideration of the Court's Order dated March 19, 2014 [52], denying Plaintiff's and Defendants' motions for summary judgment on Plaintiff's breach of contract claim (Count IV).[3] The Center maintains that the Court made a clear error of law when it denied Defendants' motion for summary judgment on this claim.

In its Order, the Court found that a material factual dispute exists as to whether Plaintiff voluntarily waived coverage under the Plan. The Crisis Center now argues that Plaintiff's voluntary or involuntary waiver is not material to her breach of contract claim because she agreed to remain employed by Defendant even after they allegedly denied her coverage, thus accepting new

---

[3] Defendant does not seek reconsideration of any other portion of the Court's Order.

3

terms of her at-will employment contract. This position is different from the one taken by Defendants during briefing on the Parties' respective motions for summary judgment.

In their reply brief in support of their summary judgment motion, Defendants argued that they were entitled to summary judgment on Plaintiff's breach of contract claim *because* the "undisputed evidence" showed that Defendants had offered her coverage since at least 2006 and "Plaintiff waived coverage to such insurance."[4] (Def.s' Reply Br., [45] at 14 of 18.) Then, in response to Plaintiff's motion for summary judgment, Defendants argued that "Plaintiff is not entitled to summary judgment on her claim for breach of employment contract because disputed facts exist tending to show that Defendants did not breach any contract." (Def.s' Resp. Br., [39] at 22 of 29.) Defendants elaborated that they thought Plaintiff had the right to elect coverage under the Plan, and only became aware that she was not receiving benefits around July 2011. (Id. at 23 of 29.)

---

[4] Defendants' Motion for Summary Judgment [38] does not even address Plaintiff's claim that Defendants violated the employment contract by refusing her coverage. Instead, Defendants' motion mischaracterizes Plaintiff's breach of contract claim as limited to Defendants' non-retaliation policy.

4

Nowhere in the earlier briefing did Defendants raise an argument based on a contract modification theory; instead, they maintained that they had not breached the employment contract because they had offered Plaintiff coverage all along.  The Crisis Center's new legal theory, which could have been raised earlier, is not a proper basis for reconsideration.  However, even if the new theory were considered, the result would not change.

Turning Plaintiff's allegations against her, the Crisis Center argues that an oral modification of the employment contract occurred when Defendants (allegedly) told Plaintiff in 2006 that she could not receive benefits and had to sign a waiver – a modification Plaintiff allegedly accepted by remaining in the Center's employ.  However, the Crisis Center over-simplifies the facts before the Court.

The evidence suggests that Defendants did not take a clear, consistent position regarding Plaintiff's eligibility to participate under the Plan.  For instance, there is no dispute that the Center's written benefits policy was changed in 2007 to provide coverage under the Plan to all full-time employees, without regard to spousal coverage.  Plaintiff also alleges that Holler, then the Executive Director, told her in mid-2007 that she was eligible for coverage

5


under the Plan and should not have been denied benefits during the open enrollment period.  Notably, the Board's prior position was that they thought she had always been eligible for coverage under the Plan.

Thus, there are questions regarding what modifications, if any, were made to the employment contract, when, and by whom.  There is also a question about who had the authority to modify the terms of Plaintiff's employment contract (e.g., the Board, the Executive Director, the Human Resources Director, etc.).  If, for instance, only the Board could modify the terms of Plaintiff's employment contract, then there arguably was no modification (based on refusing to offer Plaintiff coverage) because there is no evidence in the record that any Board member ever told Plaintiff she could not have coverage.  "[T]he issue of whether or not a valid oral modification took place [is] a proper jury question." Litman v. Mass. Mut. Life Ins. Co., 739 F.2d 1549, 1557 (11th Cir. 1984).  Thus, the Court finds that even based on the Crisis Center's new legal theory, material questions of fact remain and Defendant's Motion for Reconsideration as to Count IV is **DENIED**.

## II.     Motions for Summary Judgment on Count I

### A.     Statute of Limitations

6

The Court deferred ruling on Count I to allow Plaintiff to respond to Defendants' statute of limitations argument raised in their reply brief. (Order, [52] at 16-19 of 35.) Plaintiff submitted her sur-reply on March 28, 2014. After reviewing the Parties' submissions, the Court concludes that factual issues preclude summary judgment on this basis.

In Count I, Plaintiff alleges that "Defendants breached their fiduciary duties under ERISA [by] refusing to enroll her in or provide her coverage under the Plan upon her date of hire, and upon each successive open and special enrollment period thereafter." (Compl., [1] ¶ 33.) Defendants argue that Plaintiff's claim is barred by ERISA's statute of limitations, 29 U.S.C. § 1113. (Def.s' Reply Br., [45] at 2-3.) Section 1113 reads:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of – (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest day on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

Defendants maintain that the three-year limitations period applies here, and therefore any claim for breach of fiduciary duty arising before October 26,

7

2009 is time-barred. (Def.s' Reply Br., [45] at 3 of 18.)  Although Defendants do not specify a date upon which Plaintiff had actual knowledge of Defendants' alleged breach, they appear to suggest that Plaintiff had knowledge of her claim as early as March 2006 when she first signed a waiver of coverage. (Def.s' Reply Br., [45] at 3-5 of 18.)  Plaintiff, on the other hand, asserts that she first had knowledge of her right to participate in the Plan in August 2011, when her supervisor informed her that she could enroll during the next open enrollment period.  However, she argues, she did not have *actual* knowledge of her right to participate under the Plan until January 23, 2013, when Defendants provided the SPD for the first time. (Pl.'s Sur-reply, [53] at 2 of 11.)

The Eleventh Circuit has noted that the three-year limitations period "is an exception to ERISA's six-year statute of limitations." Brock v. Nellis, 809 F.2d 753, 754 (11th Cir. 1987).  To show actual knowledge and trigger the three-year period, it is not enough that Plaintiff "had notice that something was awry." Id. at 755.  Instead, Plaintiff "must have had specific knowledge of the actual breach of duty upon which [s]he sues." Id.

As the Court has already discussed, Plaintiff received conflicting information during her employment regarding her eligibility to participate in the

8

Plan.  (See Part I., supra.)  And the Parties do not dispute that Plaintiff first received actual Plan documents after her termination.  Therefore, the Court finds that the date upon which Plaintiff had actual knowledge of Defendants' alleged breach of their fiduciary duties is an unresolved question of fact.  Because the Court cannot determine as a matter of law when the applicable limitations period was triggered, summary judgment is improper on this ground.

### B. Relief under 29 U.S.C. § 1132(a)(3)

Count I alleges that because of Defendants' refusal to allow Plaintiff to participate in the Plan, "Plaintiff was forced to purchase her own health insurance with lesser coverage, at great cost to Plaintiff" and she "has been injured by the loss of benefits and the payment of significant insurance premiums, co-pays, deductibles, and other out of pocket expenses."  (Compl., [1] ¶¶ 31, 34.)  Defendants argue that Plaintiff's requested relief under Count I is unavailable under 29 U.S.C. § 1132(a)(3).  The Court agrees with Defendants.

Section 1132(a)(3) authorizes a civil action "(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any

provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This section has been described as a "catchall" provision, providing appropriate equitable relief when adequate remedies are not otherwise available under the statute. Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).

In the Eleventh Circuit, an ERISA plaintiff who has an adequate remedy under § 1132(a)(1)(B) cannot proceed under § 1132(a)(3). Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084, 1089 (11th Cir. 1999). Even if a plaintiff's claim under § 1132(a)(1)(B) is lost, the fact that plaintiff had a remedy under that subsection will still preclude a claim for equitable relief under § 1132(a)(3). Odgen v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284 (11th Cir. 2003) (where 1132(a)(1)(B) provided plaintiff with an adequate remedy at the time his cause of action arose, plaintiff could not proceed under 1132(a)(3)); Katz, 197 F.3d at 1089 (availability of an adequate remedy under the law does not mean, nor does it guarantee, an adjudication in one's favor and plaintiff's claim under 1132(a)(3) was precluded even though she did not prevail on the merits under 1132(a)(1)(B)); see Varity, 516 U.S. at

10

515 ("where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief").

Thus, to determine whether Plaintiff may bring her claim under § 1132(a)(3), the Court considers whether Plaintiff has a cause of action, based on the same allegations, under the more specific remedial provisions of ERISA. The Court notes that the relief sought by Plaintiff is not dispositive of this issue.[5] See Jones v. Am. Gen. Life & Accident Ins. Co., 370 F.3d 1065, 1073-74 (11th Cir. 2004) (finding that the district court should have considered whether allegations supporting the 1132(a)(3) claim were sufficient to state a cause of action under 1132(a)(1)(B), regardless of the relief sought). Here, the Court finds that Plaintiff's allegations under Count I support a claim for recovery of benefits under § 1132(a)(1)(B).

Plaintiff argues that she does not have a claim under § 1132(a)(1)(B). Specifically, Plaintiff states, she "cannot enforce her rights or recover (nor does she seek) benefits under the Plan prior to April 1, 2012 because she was not

---

[5] The Court notes that Plaintiff's alleged harm does include loss of benefits and costs that she would not have incurred had Defendants allowed her to participate in the Plan. (Compl., [1] ¶ 34.)

11

then enrolled." (Pl.'s Resp. Br., [42] at 3 of 27.)  Plaintiff continues, "[b]ut for Defendants' bad faith misconduct, she could have enrolled sooner." (Id.)

The Court disagrees with Plaintiff's contention that she is not asserting a claim for benefits under the Plan.  The root of Plaintiff's grievance is that she was wrongfully denied health and dental benefits during her employment and after her termination.  Indeed, the Complaint is rife with this particular allegation.  (See Compl., [1] ¶¶ 17-19, 21-22, 26, 30-34, 39, 45, 48, 50, 52-53, 57).  Plaintiff's allegations regarding Defendants' ERISA violations affect her to the extent she was denied benefits to which she believes she was entitled.  Thus, § 1132(a)(1)(B) provides an adequate remedy in this case and reliance on § 1132(a)(3) is improper.  See Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024, 1027-29 (11th Cir. 1997) (plaintiff's claim for "damages for fraud" was properly treated as a claim for benefits under 1132(a)(1)(B) where the alleged misrepresentation and deceit were regarding the availability of benefits to plaintiff); Byars v. Coca-Cola, Co., 2004 WL 1595399, No. 1:01-CV-3124-TWT, at *4-5 (N.D. Ga. Mar. 18, 2004) (where plaintiffs' allegations regarding

ERISA violations "concern the decision to award or deny benefits," (a)(1)(B) provides an adequate remedy).[6]

In sum, Plaintiff may not recover under § 1132(a)(3) because the allegations in her Complaint support a cause of action under § 1132(a)(1)(B), and (a)(1)(B) would provide adequate relief for Plaintiff's claim. Therefore, Defendants' motion for summary judgment [38] is **GRANTED** as to Count I.

## Conclusion

Based on the foregoing, North Georgia Mountain Crisis Center's Motion for Reconsideration [54] is **DENIED**, Plaintiff's Motion for Summary Judgement [37] on Count I is **DENIED**, and Defendants' Motion for Summary Judgment [38] on Count I is **GRANTED**.

---

[6] Furthermore, Plaintiff's assertion that she cannot bring a claim under § 1132(a)(1)(B) because she was not enrolled in the Plan conflicts with her position that she is a "participant" under the Plan because she has a colorable claim to vested benefits. (Pl.'s Resp. Br., 42] at 16-20 of 27; see also Order, [52] at 22-23 of 35.) Notably, the Court has already determined – based on Plaintiff's contention that she remains a "participant" under the Plan – that the Center had an obligation to provide Plaintiff with plan documents after her termination (following her attorney's written request). Like the ERISA provision at issue in Count II, 29 U.S.C. § 1024(b)(4), § 1132(a)(1)(B) authorizes civil actions by *participants or beneficiaries*.

**SO ORDERED**, this 20$^h$ day of August, 2014.


_____
**RICHARD W. STORY**
United States District Judge

14